IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ANDREW MONROE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:15-cv-00961-NJR |
| | ) | |
| ILLINOIS DEPARTMENT | ) | |
| OF CORRECTIONS, | ) | |
| LAWRENCE CORRECTIONAL | ) | |
| CENTER, | ) | |
| STEVE DUNCAN, | ) | |
| COUNSELOR RAY, | ) | |
| JOHN DOE #1, and | ) | |
| JOHN DOE #2, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Andrew Monroe is currently incarcerated at the Lawrence Correctional Center in Sumner, Illinois. (Doc. 1 at 1.) Proceeding *pro se*, Monroe has filed a complaint pursuant to 42 U.S.C. § 1983 against the Illinois Department of Corrections, the Warden of Lawrence, two John Doe officers, and his grievance counselor, alleging that the officers gave him a meal with a hair and maggots on it and that his counselor mishandled a grievance concerning the meal problem, all in violation of his constitutional rights. (*Id.* at 6-8) Monroe seeks money damages. (*Id.* at 9.)

This matter is now before the Court for a preliminary review of Monroe's complaint pursuant to 28 U.S.C. § 1915A. Under 28 U.S.C. § 1915A, the Court shall review a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a government entity." During this preliminary review under § 1915A, the court

"shall identify cognizable claims or dismiss the complaint, or any portion of the complaint," if the complaint "is frivolous, malicious, or fails to state a claim on which relief may be granted" or if it "seeks monetary relief from a defendant who is immune from such relief."

## Background

According to Monroe's complaint, Monroe was housed at the Lawrence Correctional Center as of June 30, 2015. (Doc. 1 at 6.) On that day, Monroe was given a dinner tray which had a hair and maggots on it. (*Id*.) He told an officer, who he has labeled John Doe 1 for purposes of this suit, about the culinary *faux pas*, and the officer told him "oh well" and that he should "deal with it" or "eat around it." (*Id.*) Another officer, dubbed John Doe 2 by Monroe, referred Monroe to the "Zone Lieutenant," who was summoned to Monroe's cell. (*Id.*) Monroe told the Zone Lieutenant of the problems with his meal tray, and the Lieutenant laughed and said that he could not provide Monroe with another meal. (*Id.*) John Doe 1 returned later to collect Monroe's tray, and told him that he too could do nothing about it, as the trays were sent from the prison's dietary service. (*Id.* at 7.) He then threw the tray in the trash. (*Id.*) Shortly thereafter, John Doe 1 and John Doe 2 arrived to pass out ice, and Monroe again asked if he was to receive a new meal tray for the night. (*Id.*) The officers said they could not provide him with a new tray and gave him the one that was previously collected, but Monroe declined that tray. (*Id.*) Monroe asked both officers for grievance forms, but they did not provide them, leaving Monroe to obtain a grievance form from another prison employee the next morning. (*Id.* at 8.)

Monroe ultimately filed a grievance about the meal issue. (*Id.*) Shortly thereafter, he spoke with Ray, a prison counselor, about his grievance, and Ray said that the grievance would take sixty to ninety days to process and that Ray also had to "protect his family." (*Id.*)

On July 27, 2015, Monroe filed a § 1983 complaint in the United States District Court for the Central District of Illinois. (*Id.* at 1.) On August 28, 2015, the Central District transferred Monroe's case to this district, as the individual defendants named were located here. (Doc. 6.)

## Discussion

Monroe's complaint focuses on food-related conditions at Lawrence, so the Court will start there (**Count 1**). To put forth a conditions of confinement claim, a prisoner must first allege that he suffered "sufficiently serious" adverse conditions, and second that officials were "deliberately indifferent to [those] adverse conditions." *Rice ex rel. Rice v. Correctional Med. Servs.*, 675 F.3d 650, 664-65 (7th Cir. 2012). In the food context, the systematic denial of food or the widespread practice of providing food under unsafe conditions could constitute cruel and unusual punishment. *Reed v. McBride*, 178 F.3d 849, 853-54 (7th Cir. 2000). That said, a one-off meal denial does not go so far as to violate the Eighth Amendment, nor does one incident where a prisoner discovers foreign items (like bugs or hair) in his meal. *See*, *e.g.*, *Jaros v. Ill. Dep't of Corrections*, 684 F.3d 667, 671 (7th Cir. 2012) (missing the "occasional[]" meal does not state a claim); *Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir. 1999) (allegation of "miss[ing] one meal" did "not rise to the level of a cognizable constitutional injury"); *Smith v. Younger*, 187 F.3d 638 (6th Cir. 1999) (affirming dismissal of Eighth Amendment claim concerning a worm found in peanut butter, as that did not indicate "a constitutional deprivation"); *Hadley v. Dubucki*, 59 F.3d 173 (7th Cir. 1995) (no constitutional violation despite presence of "cigarette ashes on dining room fixtures" or "foreign objects" in the food, as those problems can be expected in any "large food operation"); *LeMaire v. Maass*, 12 F.3d 1444, 1459 (9th Cir. 1993) ("The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not

amount to a constitutional deprivation."). Because Monroe has not alleged anything more than a one-off meal problem, **Count 1** must be dismissed without prejudice.

The remainder of Monroe's allegations concern grievance improprieties at Lawrence: he alleges that the Doe officers failed to provide him with grievance forms, and that his grievance counselor took too long to process his grievance and suggested that he had to "protect" his "family" at Lawrence during the grievance process (**Count 2**). A prison official's failure to follow grievance protocol does not, in and of itself, state a constitutional claim. *See*, *e.g.*, *Courtney v. Devore*, 595 F. App'x 618, 620-21 (7th Cir. 2014) (noting that "state grievance procedures do not create substantive liberty interests protected by due process," and the "mishandling" of those grievances states no claim); *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("[T]he alleged mishandling of [a prisoner's] grievance by persons who otherwise did not cause or participate in the underlying conduct states no claim."). This is true even when a prisoner alleges that a grievance official might fail to conduct a proper investigation or might be biased in favor of prison officials. *See, e.g., Kervin v. Barnes*, 787 F.3d 833, 835 (7th Cir. 2015) (affirming dismissal of claim against "biased grievance officers"); *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005) (prisoner had no claim for "failure to investigate" a grievance because there was "no protected liberty interest" in having the grievance "resolved to his satisfaction"); *Vasquez v. Hernandez*, 60 F.3d 325, 329 (7th Cir. 1995) (affirming dismissal of "cover up" claim for want of any injury to constitutional rights). While a prisoner might have a grievance-related claim if an official's conduct somehow blocked his way to court, *Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008), Monroe does not allege any barrier to court in this case, and his "invocation of the judicial process" points in the opposite direction, *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 2009). Accordingly, **Count 2** must be dismissed without prejudice.

One closing note is in order concerning a motion Monroe filed in this case. With his complaint, Monroe asked the Court to request counsel to assist him pursuant to 28 U.S.C. § 1915(e)(1). While there is no constitutional or statutory right to appointment of counsel in federal civil cases, district courts do have discretion under the pauper statute to request counsel to assist *pro se* litigants. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). When presented with a request for counsel, the Court must first consider whether the "indigent plaintiff made a reasonable attempt to obtain counsel" or was "effectively precluded from doing so," and if so, whether the plaintiff is "competent to litigate the case" himself in light of the case's difficulty. *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). Here, Monroe has not made any showing that he has attempted to obtain counsel on his own or was otherwise precluded from doing so, so his motion for counsel must be denied with leave to refile.

## Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated, Plaintiff's complaint (Doc. 1) is **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that, should Plaintiff wish to proceed with this case, Plaintiff shall file his First Amended Complaint within thirty-five days of the date of this Order (on or before **October 26, 2015**). He should label the form First Amended Complaint and he should use the case number for this action. An amended complaint supersedes all previous complaints, rendering previous complaints void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004). The Court will not accept piecemeal amendments to a complaint; thus, the First Amended Complaint must stand on its own. Should the First Amended Complaint not conform to these requirements, it shall be stricken. Plaintiff must also re-file any exhibits he wishes the Court to consider along with the amended complaint. Failure to file a First

Amended Complaint shall result in the dismissal of this action with prejudice. Such dismissal shall count as one of Plaintiff's three allotted "strikes" within the meaning of 28 U.S.C. § 1915(g). No service shall be ordered on any Defendant until after the Court completes its § 1915A review of the First Amended Complaint. In order to assist Plaintiff in preparing his amended complaint, the **CLERK** is **DIRECTED** to mail Plaintiff a civil rights complaint form.

**IT IS FURTHER ORDERED** that Plaintiff's motion for counsel (Doc. 4) is **DENIED**.

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  September 21, 2015**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**